ST. PAUL FIRE & MARINE INS. CO. v. BIRRELL.

(District Court, D. Oregon. August 6, 1908.)

No. 4,993.

ADMIRALTY—JURISDICTION—MARITIME CONTRACTS.

    A contract between a marine insurance company and an insurance broker, by which the latter agreed to procure insurance for the company on marine risks on commission, and to be responsible for all premiums due on such insurance, is not a maritime contract, and an action thereon by the company to recover such premiums is not cognizable in a court of admiralty.

    [Ed. Note.—Jurisdiction as to matters of contract, see notes to The Winslow, 18 C. C. A. 349; Bontin v. Rudd, 27 C. C. A. 530.]

In Admiralty. On exceptions to libel.

Snow & McCamant, for libelant.

A. F. Flegel and Charles H. Carey, for respondent.

WOLVERTON, District Judge. Libelant seeks to recover from respondent an alleged balance for premiums on marine policies of insurance. The case made by the libel is that the parties entered into a contract, whereby, for a certain commission on all premiums, respondent agreed to negotiate insurance in the libelant company upon vessels plying the high seas and the waterways of this state, and personally bound himself to be responsible to libelant for all premiums upon all marine insurance written by it at his instance and request, or for parties introduced by respondent to libelant; that an account should be and was opened between libelant and respondent, and respondent charged with all premiums written under said agreement. Respondent excepts to the libel upon the ground that the cause of action stated is not within the admiralty jurisdiction. It is conceded that, if respondent were the insured, this action would lie, and of this there can be no doubt. A contract of marine insurance is a maritime contract. Insurance Co. v. Dunham, 11 Wall. 1, 20 L. Ed. 90. It has been further adjudged that an engagement to pay premiums on marine insurance is a maritime contract. The Guiding Star (D. C.) 9 Fed. 521, affirmed in an opinion by Justice Matthews, Id. (C. C.) 18 Fed. 263.

The difficulty with libelant's case here, however, is that respondent did not contract for insurance with libelant, but only to procure insurance to be contracted by others—respondent agreeing to be responsible for the premiums. Such a contract is not maritime. The test of a maritime contract as put by the Supreme Court in Insurance Co. v. Dunham, supra, and restated in numerous decisions since, is this: "The true criterion is the nature and subject-matter of the contract, as whether it was a maritime contract, having reference to maritime service or maritime transactions"—jurisdiction being made to depend upon subject-matter, and not upon locality. The contract relied upon by libelant is not a contract of insurance, but is, on the other hand, an independent undertaking on the part of respondent to pay premiums on insurance for which he was not primarily liable. He only became liable, if at all, by virtue of a separate and distinct contract, not even remotely related to service or transactions maritime, and not cognizable in admiralty. Libelant has no better right to sue respondent in admiralty on his personal undertaking alleged than respondent would have to sue libelant there for a balance due on his services for negotiating marine insurance; and, of course, he has no such right. The contract set forth in the libel is in its nature del credere, and the dispute involves a balance of accounts between factor and principal. The authorities, both English and American, certainly make of this a del credere contract. Such a contract is said by Lord Mansfield, in Grove v. Dubois, 1 T. R. 112, 115, to be "an absolute engagement to the principal from the broker, and makes him liable in the first instance." In Leverick v. Meigs, 1 Cow. (N. Y.) 645, 663, it is said that the legal effect of a del credere agreement is that a factor, for an additional premium beyond the usual commission, when he sells the goods of his

principal, becomes bound to pay the price at all events. Such is the situation of these parties.

Moreover, while the dividing line drawn by the authorities between contracts maritime and not maritime is not always readily perceived, it has been made clear in cases of this nature by several adjudications. Thus in Marquardt v. French (D. C.) 53 Fed. 603, 606, we find the following:

"The contract of insurance, indeed, is a maritime contract, and as such is within the jurisdiction of an admiralty court. But a contract or obligation to procure insurance, such as I find this obligation to have been, is not a contract of insurance, nor is it a maritime contract. It is upon the other side of the line dividing contracts which are maritime from those which are not maritime. Such a claim does not differ in principle, so far as the jurisdiction of a court of admiralty is concerned, from a suit to recover compensation for a broker's services in obtaining a charter party; or for building a ship or for soliciting freight."

In Fox v. Patton (D. C.) 22 Fed. 746, the libel charged a breach of contract by a ship, and an independent agreement by respondents, its agents in New York, to pay the ensuing damage. Said Brown, District Judge:

"The decision must turn wholly upon the question whether the respondents' contract was or was not a maritime contract. Nothing in the libel warrants the inference that the respondents were under any legal obligation to pay the damages sustained by the breach of the charter party. There is no allegation that the charter party was executed by the respondents, or that they were owners of the bark, or of any part of it. Their only relation to the bark appears to have been that they were her agents in New York. This did not impose upon them any liability for her previous breaches of contract. The only foundation of this action, therefore, is the new and independent promise, on their part, alleged in the libel, to pay the libelants for the previous debt of the ship and of her owners. It does not appear whether or not the debt of the ship and of her owners was discharged, or intended to be discharged, by this new and independent promise of the respondents. If it was not discharged, the libelants' remedy against them remains still available. If the former debt was discharged, then it is a case of novation, in which the only relation of the prior debt to the new obligation is that the former furnishes the consideration of the latter. This original consideration, though in itself a maritime consideration, is not sufficient to make such a new and independent contract a maritime contract."

And in Minturn v. Maynard, 17 How. 477, 15 L. Ed. 235, Justice Grier, in a short opinion, disposed of a case somewhat analogous in the following language:

"The libel charges that they are owners of the steamboat Gold Hunter, that they had appointed the libelant their general agent or broker; and exhibits a bill, showing a balance of accounts due libelant for money paid, laid out, and expended for the use of respondents in paying for supplies, repairs, and advertising of the steamboat, and numerous other charges, together with commissions on the disbursements, etc. The court below very properly dismissed the libel for want of jurisdiction. There is nothing in the nature of a maritime contract in the case. The libel shows nothing but a demand for a balance of accounts between agent and principal, for which an action of assumpsit, in a common-law court, is the proper remedy. That the money advanced and paid for respondents was, in whole or in part, to pay bills due by a steamboat for repairs or supplies, will not make the transaction maritime, or give the libelant a remedy in admiralty."

See, also, The Centurion, Fed. Cas. No. 2,554.

For the foregoing reasons, this court is without jurisdiction in the premises, and the exceptions to the libel should be sustained, and the libel dismissed.